IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLES W. WADE

       v.

UNITED STATES OF AMERICA

:

:

:   Civil Action No. DKC 12-2442
    Criminal Case No. DKC 10-0574

:

:

## MEMORANDUM OPINION

Presently pending and ready for resolution are motions filed by Petitioner Charles W. Wade for reduction of sentence (ECF Nos. 38, 62) and to vacate, set aside, or correct sentence (ECF No. 42). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, both motions will be denied.[1]

---

[1] Petitioner additionally moved for the appointment of counsel in connection with his § 2255 motion. (ECF No. 54). That motion will be denied because he has not demonstrated that his petition involves exceptional circumstances such that the appointment of counsel is warranted. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975) ("[I]t is well settled that in civil actions the appointment of counsel should be allowed only in exceptional cases."). On June 3, 2013, Petitioner moved for summary judgment related to a delay in receiving the government's response to his § 2255 motion. (ECF No. 59). The delay was caused, in large part, by Petitioner's transfer on multiple occasions. In any event, he was eventually served with the response and filed a reply. Accordingly, this motion will also be denied.

## I.  Background

Petitioner was charged by a three-count indictment with possession of a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g); possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a) ("count two"); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) ("count three").  On June 27, 2011, he entered into an agreement with the government, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), to plead guilty to counts two and three in exchange for "a sentence of 144 months imprisonment, consisting of 84 months imprisonment on Count Two and a 60-month consecutive sentence of imprisonment for Count Three[.]"  (ECF No. 28 ¶ 7).

In the written plea agreement, Petitioner acknowledged his understanding that the court would "determine a sentencing guidelines range for this case" and "impose a sentence . . . tak[ing] into account the advisory guidelines range[.]"  (*Id*. at ¶ 5).  In setting forth the guidelines factors applicable to count two, the parties stipulated that "[t]he base offense level is 24 pursuant to U.S.S.G. § 2D1.1, because at least 22.4 grams but less than 28 grams of cocaine base were foreseeable to the [Petitioner] and within his possession."  (*Id*. at ¶ 6.a).  The government agreed not to oppose a two-level reduction for Petitioner's acceptance of responsibility, resulting in an

adjusted offense level of 22. (*Id.* at ¶ 6.b). As to count three, the parties agreed that "the conviction for possession of a firearm in furtherance of a drug trafficking offense carries a mandatory term of five years imprisonment, to run consecutive to the sentence imposed for the drug trafficking offense, pursuant to U.S.S.G. §§ 2K2.4(b) and 18 U.S.C. § 924(e)." (*Id.* at ¶ 6.c). Based on a pre-plea criminal history report, the parties stipulated that Petitioner was "not a career offender and that his criminal history category is VI pursuant to U.S.S.G. § 4A1.1." (*Id.* at ¶ 7). The agreement further provided that, if the court imposed the contemplated sentence, both parties would waive their respective rights to appeal.

Attached to the agreement was a stipulation of facts, which described, *inter alia*, the circumstances of Petitioner's arrest:

> On or about May 13, 2010, the Drug Enforcement Administration (DEA) and the Prince George's County Narcotics Enforcement Division executed a search and seizure warrant at the residence of [Petitioner]. . . [, who] was asleep in a basement bedroom when investigators arrived at the residence. During the search, investigators recovered approximately 23.3 grams of cocaine base, more commonly known as crack cocaine. Also recovered were cocaine packaging materials, two digital scales, razors and a glass dish with cocaine residue. Under the mattress of the bed on which [Petitioner] had been sleeping was a Nambu Model 94, 8 mm pistol, bearing serial number 59057.
>
> [Petitioner] was advised of rights by DEA Special Agent Stephen Krukar and

> voluntarily agreed to speak with law
> enforcement. [Petitioner] acknowledged that
> he lived in the bedroom and that he would
> "take responsibility" for all the items
> recovered in the basement. Agent Krukar
> asked [Petitioner] if he owned the gun found
> under the mattress. [Petitioner] initially
> declined to answer, but then acknowledged
> that he had the firearm "basically for home
> protection."

(ECF No. 28-1).

Petitioner signed the statement of facts, acknowledging that he had "carefully reviewed" it with his attorney and that it was "true and correct." (*Id.*). By separately signing the plea agreement, he affirmed that he had "carefully reviewed every part of it with [his] attorney"; that he understood and "voluntarily agree[d] to it"; and that he was "completely satisfied with the representation" provided by his counsel. (ECF No. 28, at 8).

At the Rule 11 hearing, held June 29, 2011, Petitioner was placed under oath, stated his desire to plead guilty to counts two and three, and confirmed his understanding of the litany of rights he would be required to waive. After explaining the offense charged in count two, the court advised, "if you are found guilty of that charge, based upon the law in effect at the time of this alleged offense, you would be subject to imprisonment for a minimum term of five years and a maximum term

4

of 40 years." (ECF No. 49, at 8).[2] Petitioner briefly consulted with his counsel before acknowledging that he understood. He also confirmed his understanding of the offense charged and possible penalties for count three, and the court reviewed the elements of both offenses.

The prosecutor then read aloud the statement of facts attached to the plea agreement, after which the court asked Petitioner if he agreed that they were true. Petitioner responded, "[n]o, I don't [agree with] that." (*Id.* at 16). After consultation with his counsel, he clarified that he disagreed with the allegation that he made a statement to Agent Krukar regarding the gun. The following colloquy ensued:

> THE COURT: Okay. You mean you deny that you made that statement, but you understand that [A]gent Krukar would testify to that if the case were to go to trial?
>
> [PETITIONER]: Yes, ma'am.
>
> THE COURT: Okay. Do you acknowledge that you in fact possessed that firearm that was found under the mattress?
>
> [PETITIONER]: Yes, ma'am.

---

[2] As will be discussed, although this was an accurate statement of the state of the law "at the time of this alleged offense," the Supreme Court later determined that the date of sentencing controls. Petitioner's written plea agreement similarly stated that the "sentence provided by statute for [count two is] . . . imprisonment for not less than five years and not more than 40 years[.]" (ECF No. 28 ¶ 3).

> THE COURT: Do you acknowledge that you possessed it in furtherance of your drug trafficking activities?
>
> [PETITIONER]: Yes, ma'am.
>
> THE COURT: Okay. But are there any other aspects of the statement of facts? You were sleeping in the basement bedroom?
>
> [PETITIONER]: Yes, ma'am.
>
> THE COURT: Twenty-three point three grams of crack were recovered down there?
>
> [PETITIONER]: Yes, ma'am.
>
> THE COURT: Along with packaging materials, scales, razors and a glass dish?
>
> [PETITIONER]: Yes, ma'am.
>
> THE COURT: And you acknowledge that you were living there and that those items are yours?
>
> [PETITIONER]: Yes, ma'am.

(*Id.* at 17-18).

Satisfied that Petitioner's disagreement with the statement of facts was immaterial for purposes of the plea, the court proceeded with a discussion of the applicable sentencing guidelines:

> THE COURT: Mr. Wade, as you know, we have to decide what the guidelines are, at least I do, and then use them in my decision whether to accept the agreed upon sentence.
>
> The parties have entered into some stipulations. There is going to be a presentence reported prepared by the

Probation Office and they're not bound by these stipulations, as I am not bound by them, at least not right now, but they will take your plea letter into account as they make their recommended findings.

For count two the parties agree that the base offense level is 24, because at least 22.4 grams but less than 28 grams of cocaine base were involved.

The next part is the one that [the government] amended slightly at the beginning. The parties agree that there should be a two level downward adjustment for your acceptance of responsibility. The Government is not going to make a motion for an additional one level in this case because of the timing of your decision to accept responsibility.

. . . .

Okay. Count three, the parties agree that the basic guideline is the five year mandatory consecutive sentence that is required by law. The parties further agree that your criminal history category is six, although you are not a career offender. That's based upon a pre-plea criminal history report the parties have obtained from the Probation Office.

. . . .

The parties stipulate and agree that a sentence of 144 months imprisonment, consisting of 84 months on count two and a consecutive 60 month sentence on count three is the appropriate disposition of this case. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of supervised release.

(*Id.* at 18-21).   Petitioner acknowledged his understanding of the guidelines stipulations and confirmed that he was "joining with the Government in telling [the court] that a 144 month sentence is appropriate for [him]." (*Id.* at 21).

After acknowledging that the plea agreement required him to waive his right to appeal "the determination of guilt" and "the sentence to the extent that it is 144 months in prison" (*id.* at 23), Petitioner asserted that no promises, inducements, or threats had influenced his decision to plead guilty.  He further asserted that he had met with his counsel twice regarding the plea agreement, and he agreed that he had "lots of other discussions [with her] generally about the charges"; that she "always had the time that [he] thought was necessary to talk with [him] about this case"; and that he was "satisfied with the help she ha[d] provided." (*Id.* at 24-25).

Having confirmed that Petitioner understood "what it means to plead guilty," the court found his pleas were "being entered knowingly." (*Id.* at 26).  Because "no improper promises . . . [or] threats" were made, it further concluded that the pleas were also "being entered voluntarily." (*Id.*).  Moreover, the court was "satisfied that there [was] a factual basis for the pleas" and stated that it was "prepared to accept Mr. Wade's pleas of guilty to counts two and three of the indictment." (*Id.*).

On August 22, 2011, the sentenced contemplated by the parties in the plea agreement was imposed by the court. Consistent with the waiver contained in the agreement, Petitioner did not appeal.

On April 26, 2012, the clerk received for filing Petitioner's "motion for reduction of sentence based on [] guideline Amendment 750 effective Nov. 1, 2010[,] concerning weight equivalency of cocaine base." (ECF No. 38). Approximately four months later, he filed the pending motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (ECF No. 42). The government was directed to respond to the § 2255 motion, and did so on December 26, 2012. (ECF No. 52).[3] Petitioner filed a reply to the § 2255 motion on June 14, 2013 (ECF No. 61), along with a duplicative motion for reduction of sentence (ECF No. 62).

## II.  Motion for Reduction of Sentence

Petitioner contends that his sentence under count two – *i.e.*, possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a) – should be reduced based on Amendment 750 to the United States Sentencing Guidelines, which

---

[3] In support of its response, the government filed, under seal, a copy of Petitioner's presentence report, along with a motion to seal. (ECF No. 50). This filing was later unnecessarily duplicated when the government re-mailed its response after learning the Petitioner had not yet received it. The motion to seal will be granted.

was adopted in relation to the Fair Sentencing Act of 2010 ("FSA"). As Judge Hollander recently explained:

> The purpose of the FSA and the related amendments to the guidelines [*i.e.*, Amendments 748 (eff. Nov. 1, 2010), 750 (eff. Nov. 1, 2011), and 759 (eff. Nov. 1, 2011)] was to partially alleviate the so-called "*crack v. powder disparity*," by which defendants who were convicted of a drug offense involving a given amount of cocaine base (a.k.a. "crack") were exposed to substantially higher guidelines sentences and statutory minimum sentences than defendants convicted of offenses involving the same amount of powder cocaine. *See United States v. Bullard*, 645 F.3d 237, 245 & n. 4[] (4th Cir.), *cert. denied*, 132 S.Ct. 356 (2011). The FSA lowered the disparity but did not eliminate it. *Id*. The disparity now corresponds to a weight ratio of approximately 18:1 (*i.e.*, it takes approximately 18 times as much powder cocaine as crack to trigger a given statutory minimum sentence or guidelines base offense level); under prior law, the ratio was 100:1. With respect to the Sentencing Guidelines, the reduction of the crack/powder disparity was accomplished by amending the "Drug Quantity Table" in U.S.S.G. § 2D1.1(c), which establishes the base offense levels for conviction of an offense involving given quantities of any particular controlled substance. In Amendment 759, the United States Sentencing Commission made the amendments to the Drug Quantity Table eligible for retroactive application via resentencing, pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10.

*United States v. Schuyler*, Criminal No. ELH-98-259-13, 2013 WL 1707895, at *2 (D.Md. Apr. 19, 2013) (footnote omitted; emphasis in original).

Petitioner seeks relief pursuant to 18 U.S.C. § 3582(c)(2) and U.S.S.G. § 1B1.10. "Section 3582(c)(2) is a limited exception to the ordinary rule that a sentence of imprisonment is a final judgment that cannot be modified after it has been imposed." *Schuyler*, 2013 WL 1707895, at *3. The statute provides, in relevant part,

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. [§] 994(o), . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2). "The policy statement pertinent to a motion under section 3582(c) is section 1B1.10 of the Sentencing Guidelines Manual." *United States v. Stewart*, 595 F.3d 197, 200 (4th Cir. 2010). The amendments to the Drug Quantity Table established by Amendment 750 are among the "covered" amendments set forth in U.S.S.G. § 1B1.10(c). Pursuant to § 1B.10(a)(2)(B), however, "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . [a]n amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range."

Petitioner was sentenced on August 22, 2011 – well after the FSA went into effect on August 3, 2010 – for an offense occurring on May 13, 2010, *i.e.*, prior to the FSA's effective date. At the time of his sentencing, the Fourth Circuit had held that the FSA was not retroactively applicable to defendants sentenced prior to its enactment, *see United States v. Bullard*, 645 F.3d 237, 248 (4th Cir. 2011), but the court had not published an opinion addressing whether the FSA applied to defendants sentenced for pre-FSA offenses after its enactment.[4] That issue was resolved by the Supreme Court, after Petitioner was sentenced, in *Dorsey v. United States*, --- U.S. ----, 132 S.Ct. 2321, 2331 (2012), which held that "the Fair Sentencing Act's more lenient penalties . . . apply to those offenders whose crimes preceded August 3, 2010, but who are sentenced after that date." Thus, the language concerning the mandatory minimum and maximum sentences applicable under 21 U.S.C. § 841(a), contained in the written plea agreement and recited during the Rule 11 hearing, was inaccurate. Indeed, the FSA increased the amount of cocaine base required for a mandatory minimum sentence from 5 grams to 28 grams, and the amount

---

[4] Nevertheless, there was unpublished authority suggesting that the date of the offense, rather than the date of sentencing, was controlling. *See United States v. Rhodes*, 429 Fed.Appx. 340, 342 (4th Cir. 2011).

possessed by Petitioner – 23.3 grams – did not trigger the mandatory minimum.

What Petitioner fails to recognize is that the post-FSA guidelines amendment was applied in determining the advisory guidelines range for his sentence. Prior to the FSA, the Drug Quantity Table under U.S.S.G. § 2D1.1 provided a base offense level of 26 where the defendant possessed "[a]t least 20 [grams] but less than 35 [grams] of Cocaine Base." U.S.S.G. § 2D1.1(c)(7) (2009). After the FSA, a defendant possessing "[a]t least 22.4 [grams] but less than 28 [grams] of Cocaine Base" was subject to a base offense level of 24. U.S.S.G. § 2D1.1(c)(8) (2012). *See United States v. Adkins*, 466 Fed.Appx. 302, 303 (4th Cir. 2012) ("Under the Guidelines as amended pursuant to the Fair Sentencing Act of 2010, the base offense level for an offender responsible for . . . at least 22.4 grams of crack cocaine is twenty-four"). Petitioner acknowledged possessing 23.3 grams of cocaine base, meaning that the applicable post-FSA base offense level was 24. This is the level contemplated by the parties in the plea agreement (ECF No. 28 ¶ 6.a ("[t]he base offense level is 24 pursuant to U.S.S.G. § 2D1.1, because at least 22.4 grams but less than 28 grams of cocaine base were foreseeable to the [Petitioner] and within his possession")) as recited by the court at the plea proceeding (ECF No. 49, at 19 ("[f]or count two the parties agree that the base offense level

13

is 24, because at least 22.4 grams but less than 28 grams of cocaine base were involved"). The agreement further contemplated a two-level reduction for acceptance of responsibility, resulting in an adjusted offense level of 22. Applying a criminal history category of VI, this resulted in an advisory guidelines range of 84 to 105 months. *See United States v. Southerland*, 442 Fed.Appx. 767, 768 (4th Cir. 2011) (affirming sentence where the district court "departed to an offense level of twenty-two and a criminal history category of VI (carrying an advisory Guidelines range of 84 to 105 months), and imposed a 105-month sentence"). The sentence imposed for count two, 84 months, was at the very bottom of the post-FSA guidelines range. More importantly, because Amendment 750 did not "have the effect of lowering [Petitioner's] applicable guideline range," a sentence reduction "is not authorized under 18 U.S.C. § 3582(c)(2)." U.S.S.G. § 1B.10(a)(2)(B). Accordingly, Petitioner's motions for reduction of sentence will be denied.[5]

---

[5] Because the post-FSA guidelines amendment was applied, the court need not consider whether the plea agreement, pursuant to Fed.R.Crim.P. 11(c)(1)(C), "expressly refer[red] to and relie[d] upon" the guidelines sentencing range such that relief under § 3582(c)(2) could be available. *United States v. Brown*, 653 F.3d 337, 340 (4th Cir. 2011) (citing *Freeman v. United States*, --- U.S. ----, 131 S.Ct. 2685, 2697 (2011) (Sotomayor, J., concurring). As the Fourth Circuit recognized in *Brown*, 653 F.3d at 339-40, a plurality of the *Freeman* Court established a "general rule" that a district court cannot grant § 3582(c)(2)

## III. Motion to Vacate, Set Aside, or Correct Sentence

### A. Standard of Review

To be eligible for relief under 28 U.S.C. § 2255, a petitioner must show, by a preponderance of the evidence, that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law[.]" 28 U.S.C. § 2255(a). A *pro se* movant, such as Petitioner, is entitled to have his arguments reviewed with appropriate consideration. *See Gordon v. Leeke*, 574 F.2d 1147, 1151–53 (4th Cir. 1978). But if the § 2255 motion, along with the files and records of the case, "conclusively show[s] that the prisoner is entitled to no relief," the claims raised in the motion may be summarily denied. *See* 28 U.S.C. § 2255(b).

### B. Analysis

Petitioner raises the following grounds in his § 2255 motion: (1) that his trial counsel rendered ineffective

---

relief to defendants who pleaded guilty pursuant to a Rule 11(c)(1)(C) agreement "because their sentences are based, not on a sentencing range, but on their plea agreements." The concurring opinion by Justice Sotomayor set forth a "limited exception" where "a (C) agreement expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment, and that range is subsequently lowered by the United States Sentencing Commission[.]" *Brown*, 653 F.3d at 340 (quoting *Freeman*, 131 S.Ct. at 2695). Because the guidelines range applicable to Petitioner's sentence was not "subsequently lowered," the exception could not apply.

assistance by (a) failing to file a notice of appeal, (b) failing to investigate possible defenses or to prepare for trial, (c) providing erroneous advice in connection with his plea, (d) abandoning the defense strategy at a suppression hearing, (e) failing to raise drug and alcohol and mental health history as mitigating evidence at sentencing, (f) failing to challenge the legal sufficiency of the evidence; and (2) that the court erred by failing to sentence him under the FSA.

## A.    Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are governed by the well-settled standard adopted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under the *Strickland* standard, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *See Strickland*, 466 U.S. at 687. To demonstrate actual prejudice, Petitioner must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In the context of a § 2255 motion challenging a conviction following a guilty plea, the petitioner generally establishes prejudice by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985);

*accord United States v. Mooney*, 497 F.3d 397, 401 (4ᵗʰ Cir. 2007).

In applying *Strickland*, there exists a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *Strickland*, 466 U.S. at 688-89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4ᵗʰ Cir. 1991). Courts must judge the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee*, 235 F.3d 897, 906 (4ᵗʰ Cir. 2000). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted from some performance deficiency. *See Strickland*, 466 U.S. at 697.

A petitioner who pleads guilty has an especially high burden in establishing an ineffective assistance claim. As the Supreme Court recently explained, "[t]he plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases . . . where witnesses and evidence were not presented in the first place." *Premo v. Moore*, ––– U.S. ––––, 131 S.Ct. 733, 745-46 (2011). Thus, a petitioner alleging ineffective assistance in the context of a guilty plea must meet a "substantial burden . . . to avoid the plea[.]" *Id*. at 746.

## 1. Failure to Appeal

Petitioner initially faults his trial counsel for failing to file a notice of appeal. He asserts that he "tried to file a notice of appeal in August 2011," but "was informed by his attorney . . . that because of his plea of guilty under Rule 11(c)(1)([C]) [he] waived his right[] to an appeal by pleading guilty per [the] plea agreement[.]" (ECF No. 42-1, at 2). Moreover, his counsel allegedly advised him that "filing an appeal [was] a direct breach of [his] plea agreement and the government may bring back some of the charges it dropped in exchange." (*Id.*).

As Judge Blake explained in *United States v. Fabian*, 798 F.Supp.2d 647, 678-79 (D.Md. 2011):

> Whether an attorney's failure to file an appeal constitutes ineffectiveness of counsel turns on a series of inquiries. The first question is whether a defendant unequivocally instructed his attorney to file a notice of appeal. If an attorney "fails to follow his client's unequivocal instruction to file a notice of appeal," his performance is constitutionally ineffective, "even though the defendant may have waived his right to appeal." *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007); *see also United States v. Witherspoon*, 231 F.3d 923, 926 (4th Cir. 2000) ("An attorney who fails to file an appeal after being instructed by his client to do so is per se ineffective."). The probability of success on appeal is then irrelevant. *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993).

If the defendant did not unequivocally instruct his attorney to appeal, the question becomes whether defense counsel "consulted with the defendant about an appeal." *Roe v. Flores-Ortega*, 528 U.S. 470, 478, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). The term "consult" in this context carries a "specific meaning," namely "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes" about whether to appeal. *Id*. If counsel has adequately consulted with the defendant about whether to appeal, "the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id*. That is, if an attorney satisfies the obligation to "consult," then the onus is on the defendant to expressly instruct the attorney to file a notice of appeal. If the defendant does not expressly instruct the attorney to appeal, then a subsequent failure to appeal does not constitute constitutionally ineffective assistance of counsel.

On the other hand, if counsel did not "advis[e] the defendant about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover the defendant's wishes . . . the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id*. This inquiry turns on whether (1) "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)," or (2) "this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. In other words, a failure to consult is not necessarily constitutionally unreasonable; rather, the question requires considering

"all the information counsel knew or should
have known" at the time a notice of appeal
would have had to be filed. *Id*. "[A] highly
relevant factor in this inquiry will be
whether the conviction follows a trial or a
guilty plea, both because a guilty plea
reduces the scope of potentially appealable
issues and because such a plea may indicate
that the defendant seeks an end to judicial
proceedings." *Id*. Only if a rational
defendant would want to appeal or the
particular defendant "reasonably
demonstrated to counsel that he was
interested in appealing" does counsel's
subsequent failure to appeal constitute
ineffective assistance of counsel. *See id*.

Here, Petitioner does not allege that he unequivocally
instructed his counsel to file an appeal. Rather, he merely
asserts that he consulted with his attorney on the issue and
that she discouraged an appeal in light of Petitioner's express
waiver of that right in the plea agreement and the potential for
a substantially greater sentence if the case proceeded to trial.
Even under Petitioner's version of events, counsel clearly
advised him of the disadvantages of taking an appeal, and
Petitioner has not identified any potentially meritorious
appellate issue. He received a substantial benefit from the
plea agreement his counsel negotiated, including a two-level
downward adjustment for acceptance of responsibility and the
government's promise not to seek an enhancement for a prior
felony conviction. Counsel negotiated a sentence under count
two at the very bottom of the guidelines range, under the post-

FSA guidelines amendment, and the sentence that was ultimately imposed was the exact sentence Petitioner bargained for. Assuming, *arguendo*, that his attorney did not make a reasonable effort to discover his wishes concerning an appeal, Petitioner has not shown – and, very likely, cannot show – that "a rational defendant would want to appeal" under these circumstances or that he "reasonably demonstrated to counsel that he was interested in appealing." *Fabian*, 798 F.Supp.2d at 678. Absent such a showing, particularly where Petitioner pleaded guilty and waived any right to appeal the conviction or sentence, the failure of his attorney to file a notice of appeal does not constitute ineffective assistance of counsel.

### 2. Erroneous Advice in Relation to Plea

Petitioner next alleges that, "[o]n countless occasions[, his] counsel gave erroneous advice to [e]ncourage [him] to accept [the] plea agreement," going "so far as to threaten [him] with a super[s]eding indictment . . . [i]f [he] didn't[,] . . . along with the possibility of [him] receiving life if the decision was made to go to trial[.]" (ECF No. 42-1, at 3). According to Petitioner, his counsel's "deficient performance . . . continue[d] throughout [the] negotiation in accepting the plea" when she "coerced [his] plea in a . . . last minute offer" and "clearly stated 'the Fair Sentencing Act' did not apply to [him]." (*Id*. at 4, 6). Moreover, Petitioner alleges that his

attorney "had [him] plead guilty when the evidence in the case did not support a guilty finding" on the gun charge and later "pressure[d]" him not to attempt to withdraw the plea when he insisted he "wasn't guilty of [§] 924(c)." (*Id.* at 5, 6).

The majority of these claims are raised in a purely conclusory manner; the rest are patently meritless. Assuming that Petitioner's counsel erroneously advised him that the FSA had no application, Petitioner cannot show prejudice arising from that error because, as noted, the post-FSA guidelines were applied in this case. *See Strickland*, 466 U.S. at 697 (unnecessary to determine whether performance was deficient if no prejudice could have resulted).[6] Regarding sufficiency of the evidence for the gun charge, Petitioner acknowledged at the plea proceeding, under oath, that he "in fact possessed th[e] firearm that was found under the mattress"; that he "possessed it in furtherance of [his] drug trafficking activities"; that "[t]wenty-three point three grams of crack" and "packaging materials, scales, razors and a glass dish" were recovered from the same room where the gun was located; and that he was "living there and that those items [were his]." (ECF No. 49, at 17-18).

---

[6] To the extent Petitioner claims error because his counsel advised him that a five-year mandatory minimum sentence would apply, any such error is harmless where he voluntarily agreed to a sentence based on the proper, post-FSA guidelines. Indeed, the mandatory minimum sentence that would have been applicable under the pre-FSA guidelines had no bearing on his sentence.

A defendant is guilty under § 924(c)(1)(A) when, "in furtherance of [a drug trafficking] crime, [he] possesses a firearm[.]" 18 U.S.C. § 924(c)(1)(A). While the sentence may be enhanced where the firearm is brandished or discharged, the defendant is subject to "a term of imprisonment of not less than 5 years" when those factors are not presented. 18 U.S.C. § 924(c)(1)(A)(i). Because Petitioner was sentenced to a five-year term as to count three, his argument that there was insufficient evidence supporting the conviction because he never "displayed the weapon" or "fired it" is unpersuasive. Accordingly, his counsel could not have rendered ineffective assistance in failing to argue that point.

As to the remaining, conclusory allegations that his "counsel gave erroneous advice" that induced his plea agreement, Petitioner does not so much as mention the substance of the alleged erroneous advice. He cites, without analysis, the recent Supreme Court cases in *Lafler v. Cooper*, --- U.S. ----, 132 S.Ct. 1376 (2012), and *Missouri v. Frye*, --- U.S. ----, 132 S.Ct. 1399 (2012), but it is not at all clear how the holdings of those cases could apply. As the Fourth Circuit recently noted:

> In *Lafler*, the Court held that the Sixth
> Amendment right to counsel applies to the
> plea bargaining process and prejudice occurs
> when, absent deficient advice, the defendant
> would have accepted a plea that would have

> resulted in a less severe conviction, sentence, or both. *Lafler*, 132 S.Ct. at 1384-85. In *Frye*, the Supreme Court held that a component of the Sixth Amendment right to counsel in the plea bargaining context is that counsel has a duty to communicate any offers from the Government to his client. *Frye*, 132 S.Ct. at 1408.

*United States v. Pender*, No. 12-6806, 2013 WL 1137452, at *1 (4th Cir. Mar. 20, 2013) (Table). Petitioner does not allege that his counsel failed to communicate a plea offer or that she erroneously encouraged him not to accept one. To the extent that he alleges that he would not have accepted the government's offer if his attorney had not given erroneous advice, he has failed to identify the substance of such advice or demonstrate how he was prejudiced by having accepted it. Under these circumstances, his claims of ineffective assistance of counsel related to the plea cannot prevail.

### 3. Conduct Unrelated to Plea

Petitioner further alleges that his counsel's "performance was deficient based largely on the fact of [her] failure to investigate and/or prepare for trial." (ECF No. 42-1, at 3). Specifically, he faults his attorney's failure to "interview prospective [d]efense witness[es] who could've corroborated [his] version of events." (*Id.*). Moreover, he contends that his counsel relied on a certain case or line of cases in briefing his motion to suppress evidence, then "abandon[ed] this

strategy completely" at the motions hearing, thereby "rendering [his] defense defenseless." (*Id*.). According to Petitioner, his counsel's representation was also constitutionally infirm because she failed to argue that "the drugs were for personal use and not for sale" (*id*. at 5) and failed to seek a downward departure at sentencing based on his "mental illness and his addiction to certain controlled substances" (*id*. at 4).

These claims are belied by the record. Absent "extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005); *see also United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003) ("when a defendant says he lied at the Rule 11 colloquy, he bears a heavy burden in seeking to nullify the process"); *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy").

Petitioner has not presented any extraordinary circumstances warranting relief. The Rule 11 colloquy demonstrates his satisfaction with the performance of his

counsel; that he was, in fact, guilty of every material element of the offenses charged; and that that he voluntarily agreed to the sentence that was ultimately imposed. Petitioner has not identified the witnesses that his counsel allegedly failed to interview – nor, for that matter, has he explained how witness interviews would have affected the outcome of the case – and he cannot show prejudice arising from any such error in light of the representations he made under oath at the plea proceeding. Moreover, he should not now be heard to complain about arguments that his counsel failed to raise at the suppression hearing. In *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), the Supreme Court explained that "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." As a result, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.; see also Parham v. United States*, Civ. No. 5:11CV63-03-V, Crim. No. 5:08CR51, 2011 WL 1899773, at *5 (W.D.N.C. May 19, 2011) (citing *Tollett* for the same proposition). Despite Petitioner's present claim to the contrary, the record amply demonstrates that his counsel made the court aware of his mental health and substance abuse history, but, even if she did not, Petitioner cannot show

that this would have affected a sentence that he explicitly agreed upon. Finally, to the extent that Petitioner now suggests the drugs recovered were for "personal use and not for sale," the record clearly establishes otherwise. Accordingly, Plaintiff's ineffective assistance claims will be denied.

### B. Fair Sentencing Act

Finally, Petitioner appears to challenge his conviction under 18 U.S.C. § 924(c) insofar as the statute requires the defendant to possess a firearm in relation to a "drug trafficking crime." According to Petitioner, after enactment of the FSA, possession with intent to distribute five grams or more of crack cocaine is no longer a "drug trafficking crime"; thus, there was insufficient evidence to convict him on count three.

As the government observes, this claim is procedurally barred. The ordinary rule is that "an error can be attacked on collateral review only if first challenged on direct review." *United States v. Harris*, 183 F.3d 313, 317 (4th Cir. 1999); *see also United States v. Sanders*, 247 F.3d 139, 144 (4th Cir. 2001) ("[H]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotation marks omitted). Where a petitioner has procedurally defaulted a constitutional claim by failing to raise it on direct appeal, the claim may be considered for the first time in a § 2255 motion only upon a showing of either "cause and actual prejudice

27

resulting from the errors of which he complains," or a demonstration that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *United States v. Mikalajunas*, 186 F.3d 490, 492–93 (4th Cir. 1999).

A showing of cause for a procedural default "must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *Mikalajunas*, 186 F.3d at 493. To establish actual prejudice, the petitioner must show that the error worked to his "actual and substantial disadvantage," rather than merely creating a possibility of prejudice. *Murray v. Carrier*, 477 U.S. 478, 494 (1986). To establish that a miscarriage of justice would result if the procedurally defaulted claim is not considered, the petitioner "must show actual innocence by clear and convincing evidence" – in other words, "actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted[.]" *Mikalajunas*, 186 F.3d at 493, 494.

Here, Petitioner was required to raise any challenge to the sufficiency of the evidence on direct appeal. Because he failed to do so, he bears the burden of showing either (1) cause and actual prejudice resulting from the alleged violations, or (2)

that he is actually innocent of the crimes for which he stands convicted. Petitioner has made no such showing.

In any event, this claim is meritless. The United States District Court for the District of South Carolina recently considered a similar issue in *Robinson v. United States*, Cr. No. 6:09-cr-01337-GRA-1, 2013 WL 979355, at *4 (D.S.C. Mar. 13, 2013). Like the instant petitioner, the § 2255 petitioner in that case challenged the sufficiency of his conviction under 18 U.S.C. § 924(c), arguing that "possession with intent to distribute five grams or more of crack cocaine is no longer a 'drug trafficking crime'" following the enactment of the FSA. *Robinson*, 2013 WL 979355, at *4. The court disagreed:

> A "drug trafficking crime" is defined as "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 *et seq.*). . . ." 18 U.S.C. § 924(c)(2). A felony is generally defined as any offense for which the possible punishment is in excess of one year of imprisonment. *See* 18 U.S.C. § 3559(a); *Lopez v. Gonzales*, 549 U.S. 47, 56 n. 7, 127 S.Ct. 625, 166 L.Ed.2d 462 (2006) (stating that "for purposes of § 924(c)(2) the crimes the CSA defines as 'felonies' are those crimes to which it assigns a punishment exceeding one year's imprisonment.").

> Here, possession with the intent to distribute crack cocaine is a "drug trafficking crime" sufficient to support Petitioner's § 924(c) conviction. *United States v. James*, 834 F.2d 92, 92-93 (4th Cir. 1987) (interpreting a narrower definition of "drug trafficking crime" and holding that possession with intent to distribute is a

> "drug trafficking crime" sufficient to
> support a § 924(c) conviction). While the
> FSA increased the amount of crack cocaine
> required for a mandatory 5-year minimum
> sentence under the Controlled Substances Act
> from 5 grams to 28 grams, possessing five
> grams or more of cocaine still constitutes a
> "drug trafficking crime" for § 924(c)
> purposes. The applicable statutory penalties
> for possession with the intent to distribute
> crack cocaine, whatever the applicable
> quantity, all still greatly exceed one year
> in prison. 21 U.S.C. §§ 841(b)(1)(A),
> (b)(1)(B), & (b)(1)(C).

*Robinson*, 2013 WL 979355, at *4. Petitioner's argument fails

for the same reasons. Accordingly, even if his challenge under

the FSA was not procedurally barred, his claim could not

prevail.

### C. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings

under 28 U.S.C. §§ 2254 or 2255, the court is required to issue

or deny a certificate of appealability when it enters a final

order adverse to the petitioner. A certificate of appealability

is a "jurisdictional prerequisite" to an appeal from the court's

order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir.

2007). A certificate of appealability may issue "only if the

applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2). Where the court

denies a petitioner's motion on its merits, a prisoner satisfies

this standard by demonstrating that reasonable jurists would

find the court's assessment of the constitutional claims debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (internal marks omitted).

Upon review of the record, the court finds that Petitioner does not satisfy the above standard. Accordingly, it will decline to issue a certificate of appealability.

## IV. Conclusion

For the foregoing reasons, Petitioner's motion for reduction of sentence and motion to vacate, set aside, or correct sentence will be denied. A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge